## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

**ZACHARY ZEDALIS,**

                                      **CASE NO.: 1:17-cv-00113-MW-GRJ**

        **Plaintiff,**

**vs.**

**SADIE DARNELL, in her official**
**capacity as SHERIFF, ALACHUA**
**COUNTY, FLORIDA,**

        **Defendant.**
_____/

## PLAINTIFF'S TRIAL BRIEF

Plaintiff, Zachary Zedalis, hereby files his Trial Brief as follows:

### I.      Generally

Plaintiff incorporates his Response in Opposition to Defendant's Motion in Limine which includes arguments that may arise during the trial of this case Additionally, to state a First Amendment retaliation claim, a plaintiff must establish: (1) "his speech or act was constitutionally protected;" (2) "the defendant's retaliatory conduct adversely affected the protected speech;" and (3) "there is a causal connection between the retaliatory actions and the adverse effect on speech." *Bennett v. Hendrix,* 423 F.3d 1247, 1250 (11th Cir.2005) (citations omitted); *see also Abella v. Simon,* 522 Fed.Appx. 872, 873 (11th Cir.2013). A

plaintiff's "claim depends not on the denial of a constitutional right, but on the harassment [ ] received for exercising [his] rights." *Bennett,* 423 F.3d at 1253.

The 11th Circuit applies a four-stage analysis "[i]n cases where the state denies discharging the employee because of speech." *Bryson v. City of Waycross*, 888 F. 2d 1562, 1565 (11th Cir. 1989). First, it considers "whether the employee's speech may be 'fairly characterized as constituting speech on a matter of public concern.'" *Id.* (quoting *Rankin v. McPherson,* 483 U.S. 378, 384, 107 S. Ct. 2891, 97 L.Ed.2d 315 (1987)). "Political speech addressing public issues or candidates running for public office invariably address matters of public concern because it is 'the unfettered interchange of ideas for the bringing about of political and social changes desired by the people.'" *Stough v. Gallagher,* 967 F.2d 1523, 1527 (11th Cir.1992) (quoting *Roth v. United States,* 354 U.S. 476, 484, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957)); *Harvey v. City of Bradenton*, 804CV1748TEAJ, 2005 WL 3533155, at *6 (M.D. Fla. Dec. 22, 2005).

Only if this threshold issue is satisfied will the Court then will then apply the second prong, where it "weighs the employee's first amendment interests against 'the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Bryson*, 888 F. 2d 1562 (11th Cir. 1989)(quoting *Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). Third, "[i]f the public employee prevails on the balancing

2

test, the fact-finder determines whether the employee's speech played a 'substantial part' in the government's decision to demote or discharge the employee." *Id.* "Fourth, if the employee prevails by showing that the speech was a substantial or motivating factor in the state's employment decision, the state must prove by a preponderance of the evidence that 'it would have reached the same decision ... even in the absence of the protected conduct.' " *Id.* at 1566 (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 286, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)); *see also Stanley v City of Georgia*, 219 F.3d 1280 (11th Cir. 2019).

The statement [or speech] will not be considered in a vacuum; the manner, time, and place of the employee's expression are relevant, as is the context in which the dispute arose.... pertinent considerations [are] whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise. *Rankin,* 483 U.S. at 388, 107 S. Ct. at 2899. Because political speech cases require an open-ended inquiry concerned with specific work-relationships, the Supreme Court did not lay down a general standard against which employee speech is to be judged. *Pickering,* 391 U.S. at 569, 88 S.Ct. at 1735. Thus, the court must balance the competing interests on a case-by-case basis. *See Dartland v. Metropolitan Dade County,* 866 F.2d 1321 (11th Cir.1989);

3

*Stough v. Gallagher*, 967 F.2d 1523, 1527–28 (11th Cir. 1992); *see also Morgan v. Ford*, 6 F.3d 750, 753-54 (11th Cir. 1993) (stating "[a] state may not demote or discharge a public employee in retaliation for protected speech[,]" and discussing the four-part *Pickering-Connick* test).

In *Snipes v. Volusia County*, the Eleventh Circuit explained how a government employee's free speech rights should be balanced against his employer's interest via application of the *Pickering-Connick* test:

> First, we consider whether Plaintiff's speech was made as a citizen and whether it implicated a matter of public concern. If this first threshold requirement is satisfied, we then weigh Plaintiff's First Amendment interests against the City's interest in regulating his speech to promote the efficiency of the public services it performs through its employees. The above two issues are questions of law that are decided by the court. The court's resolution determines whether Plaintiff's speech is protected by the First Amendment.
>
> If his speech is so protected, the third stage of the analysis requires Plaintiff to show that it was a substantial motivating factor in his termination. If Plaintiff is able to make this showing, the burden shifts to the City to prove that it would have terminated Plaintiff even in the absence of his speech. Because these final two issues, which address the causal link between Plaintiff's speech and his termination, are questions of fact, a jury resolves them unless the evidence is undisputed.

704 Fed. Appx. 848, 851 (11th Cir. Aug. 21, 2017) (citing *Moss v. City of Pembroke Pines*, 782 F.3d 613, 617-18 (11th Cir. 2015 (citations and quotations omitted in original)).

Regarding the first determination of the *Pickering-Connick* test, the trial court must determine the legal issue of whether the employee's speech may be "'fairly characterized as constituting speech on a matter of public concern.'" *Rankin v. McPherson*, 483 U.S. 378, 384 (1987)(quoting *Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 1689, 75 L.Ed.2d 708 (1983). The court must review the "content, form, and context of the speech" to make this determination. Id. at 388. If the court concludes the speech is indeed of public concern, the court must then balance the interests of the public employee against the interest of the public employer. *See Rankin* at 384-85. The matter of causation is almost always a determination to be made by a jury. *See Mt. Healthy City Sch. Dist. v. Doyle*, 429 U.S. 274, 287 (1977) (discussing that a jury should determine whether protected speech played a substantial part in retaliatory employment decision); *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997) ("Ordinarily, causation is a question to be resolved by a jury.").

Regarding the first prong of the *Pickering-Connick* test, Plaintiff's public speech is unquestionably related to public concern. *See Monitor Patriot Co. v. Roy*, 401 U.S. 265, 272 (1971) ("And if it can be conceded that the First Amendment was 'fashioned to assure the unfettered interchange of ideas for the bringing about of political and social changes desired by the people,' then it can hardly be doubted that the constitutional guarantee has its fullest and most urgent application precisely to

the conduct of campaigns for political office." (quoting *Roth v. United States*, 354 U.S. 476, 484 (1957)); *Connick,* 461 U.S. at 138 (identifying public concern as "relating to any matter of political, social, or other concern to the community."); *Cragg v. City of Osawatomie*, 143 F.3d 1343, 1346 (10th Cir. 1998) ("We would be hard pressed to classify the election of a city council member as anything other than a matter of great public concern."). Here, Plaintiff commented on matters of public concern; the record demonstrates those are: safety matters regarding deputies' ability to more promptly respond to emergency calls through use of in-vehicle computers, top-heavy budgeting which resulted in inadequate on-street deputy presence, related safety issues such as promoting employees above their qualification levels, and diversity of employees within the sheriff's office. Thus, Plaintiff has satisfied the first element of the *Pickering-Connick* test.

As to the second element of the *Pickering-Connick* test, the court must weigh the value of the communication of public concern, against the Defendant's interest in ensuring the efficiency of its services it provides to the public, i.e., effective law enforcement. Pickering at 568. There are several factors to consider in balancing the state's interest in efficient provision of public services against the employee's speech interest, including: (1) whether the speech at issue impedes the government's ability to perform its duties efficiently, (2) the manner, time and place of the speech, and (3) the context within which the speech was made. *Pickering*, 391 U.S. at 567-68;

*Connick*, 461 U.S. at 151-55; *Ferrara v. Mills*, 781 F.2d 1508,1513 (11th Cir. 1986); *Morales v. Stierheim*, 848 F.2d 1145, 1149 (11th Cir. 1988). Here, Defendant will not be able to present evidence that her interests outweigh Plaintiff's. *See generally*, *Jordan v. Ector County*, 516 F.3d 290, 299 (5th Cir. 2008) (finding that the balancing test did not fall in the employer's favor where it presented no evidence that Jordan's political activities caused disruptions that would justify termination

Defendant will also argue that Plaintiff cannot show his speech was a motivating factor in the actions Defendant took against him.  Defendant will note and attempt to prove that the following factors weigh against liability here:  (1) the time between Plaintiff's speech and the adverse actions; (2) whether the Sheriff's stated reasons for the action are pretextual or have varied; and (3) whether the Sheriff's other actions or words evidence a causal relation between the speech and the adverse actions. *Valdes v. City of Doral*, 662 Fed. Appx. 803, 812 (11th Cir. 2016). [Doc. 60-1, pg. 14].

To establish a causal connection, Plaintiff must show that the protected activity and adverse action "are not completely unrelated." *Wideman v. WalMart Stores, Inc.*, 141 F. 3d 1453, 1457 (11th Cir. 1998). In determining whether a plaintiff has produced *prima facie* evidence of causation, the courts have generally focused on two indicia: timing and evidence of ongoing antagonism. *See id*. As the Third Circuit explained:

> It is important to emphasize that it is causation, not temporal proximity itself, that is an element of plaintiff's prima facie case, and temporal proximity merely provides an evidentiary basis from which an inference can be drawn. The element of causation, which necessarily involves an inquiry into the motives of an employer, is highly context-specific.

*Kachmar v. Sungard Data Sys., Inc.*, 109 F .3d 173, 178 (3d Cir. 1997).

The causal connection is not "the sort of logical connection that would justify a prescription that the protected participation in fact prompted the adverse action" that would "rise to the level of direct evidence of discrimination." *Simmons v. Camden County Bd. Of Educ.*, 757 F.2d 1187, 1189 (11th Cir. 1985). Rather, the Eleventh Circuit "construe[s] the causal link element broadly so that 'a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated.'" *Goldsmith v. Bagby Elevator Co., Inc*., 513 F.3d 1261, 1278 (11th Cir. 2008) (quoting *Olmsted v. Taco Bell Corp*., 141 F.3d 1457, 1460 (11th Cir. 1998) (finding a time span of approximately five months to be sufficient to prove causation).

Here, Defendant will likely offer explanations for disciplining Plaintiff and eventually terminating his employment are not supported by the record. Critically, as explained in greater detail below, Defendant's statements that "[b]ased on past practice, either the criminal conduct relating to domestic battery or the separate charge of untruthfulness would have been sufficient to cause Zedalis to be

dismissed", do not match the complete lack of action taken to discipline and terminate Mr. Allen, whose documented insubordination, failure to follow directives, and criminal conduct impersonating a sworn officer, was not even investigated.

## II.    Comparators

Beyond Defendant's direct, retaliatory actions against Plaintiff for his speech and candidacy, the record shows that Defendant treated other employees who did not engage in protected speech more favorably than Plaintiff. Specifically, Defendant did not terminate - indeed did not even discipline - Mr. Allen, despite his numerous and repeated instances of blatant insubordination, his continued and blatant refusal to properly utilize the chain of command, and his conduct in violation of § 843.08, Fla. Stat., using his retired law enforcement badge to essentially impersonate a sworn law enforcement officer.

Defendant argues that witnesses such as Kevin Allen, Joseph Sperring and Keith Vermillion are not proper "comparators". However, "comparators", *per se*, are not required in a First Amendment analysis. Evidence of these other employees who received more favorable treatment than Plaintiff is not *Lewis v City of Union City, Georgia*, 918 F.3d 1213 (11th Cir. 2019) "comparator" evidence.

These witnesses are offered as evidence that the protected political speech of Plaintiff is the "substantial motivating factor" for Defendant's termination of

Plaintiff because these other employees were treated more favorably under the same or more egregious infractions. These witnesses' testimony is evidence that Defendant would, and did, not make the same decision absent the protected speech and in fact operated in a culture of enabling crimes and ignoring infractions, not terminating deputies under false charges as it did to Plaintiff.

In *Walton v. Powell*, 821 F. 3d 1204 (10th Cir. 2016), the Tenth Circuit held that the *McDonnell-Douglas* burden-shifting framework does not apply to First Amendment retaliation claims, which are governed by a plaintiff-friendly standard. The Supreme Court has never used *McDonnell Douglas* to assess a First Amendment retaliation claim. *See, e.g.*, *Garcetti v. Ceballos*, 547 U.S. 410 (2006); *Casey v. W. Las Vegas Indep. Sch. Dist.*, 473 F.3d 1323 (10th Cir. 2007); *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192 (10th Cir. 2007). Every circuit to have considered whether *McDonnell Douglas* should apply in First Amendment discrimination or retaliation cases has declined to do so. *See, e.g.*, *Dye v. Office of the Racing Comm'n*, 702 F.3d 286, 294-95 (6th Cir. 2012); *Allen v. Iranon*, 283 F.3d 1070, 1074-75 & n.4 (9th Cir. 2002); *Manh v Jefferson*, 891 F.3d 1093 (8th Cir. 2018); *Acevedo-Diaz v. Aponte*, 1 F.3d 62, 66-67 (1st Cir. 1993).

The Supreme Court applies a more conventional and straightforward test of liability for use in First Amendment retaliation cases. In *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274 (1977), the Court held that a

First Amendment retaliation plaintiff must prove (using either direct or circumstantial evidence) that his political affiliation was a "substantial" or "motivating" factor behind the adverse employment action. *Id*. at 287. If the Plaintiff succeeds in proving this, he prevails. *See, e.g.*, *McCue v. Bradstreet*, 807 F.3d 334, 344-47 (1st Cir. 2015) (applying *Mt. Healthy* to First Amendment retaliation suit in summary judgment context); *Eckerman v. Tenn. Dep't of Safety*, 636 F.3d 202, 207-08 (6th Cir. 2010) (same). Evidence of others who were treated more favorably assists the Plaintiff in meeting his burden of proof.

Here, both Plaintiff and Mr. Allen were accused of insubordination and criminal conduct. Only Plaintiff was investigated, disciplined, and eventually terminated. Mr. Allen was to be offered the "fast track" for his insubordination documented in investigation 18-AI-03, but despite Capt. Bessigner's initial findings that Mr. Allen had indeed engaged in blatant insubordination, Col. Huckstep, acting under the Sheriff's authority, ordered the investigation closed with no action taken against Mr. Allen.

Unlike Mr. Allen, Plaintiff engaged in protect speech and political patronage. Defendant's considerably more favorable treatment of Mr. Allen, despite his egregious and criminal conduct related directly to the performance of his duties with Defendant, further supports Plaintiff's showing of retaliation. Similarly, that Defendant engaged in retaliation against Mr. Davis for openly supporting Plaintiff's

campaign, contrasted with Mr. Allen's treatment, further supports Plaintiff's claim of First Amendment retaliation.

Respectfully submitted,

/s/ Marie A. Mattox
Marie A. Mattox [FBN 739685]
MARIE A. MATTOX, P.A.
310 East Bradford Road
Tallahassee, Florida  32303
Telephone: (850) 383-4800
Facsimile: (850) 383-4801

ATTORNEY FOR PLAINTIFF

**CERTIFICATE OF COMPLIANCE**

I hereby certify in accordance with N.D. Local R. 7.1, that this brief complies with the type-volume limitation as specified. Specifically, this response contains 2709 words.

/s/ Marie A. Mattox
Marie A. Mattox

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true copy of the foregoing has been served this 2nd day of September 2020 via CM/ECF to all parties of record.

/s/ Marie A. Mattox
Marie A. Mattox